**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| YESSER JOSE LOPEZ SOZA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-02224-SHL-tmp |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION**

On March 11, 2026, Petitioner Yesser Jose Lopez Soza filed the Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 7.) Lopez Soza challenges his continued detention pursuant to 8 U.S.C. § 1225 in the West Tennessee Detention Facility without a bond hearing as violative of his Fifth Amendment due process rights, and seeks "an individualized bond hearing before" an Immigration Judge ("IJ") or immediate release from immigration detention. (Id. at PageID 15.) He contends that if he is subject to immigration detention, such detention falls under 8 U.S.C. § 1226, not § 1225. (ECF No. 9 at PageID 32–33.) Respondent, the United States Department of Homeland Security ("DHS"), filed its response on March 20. (ECF No. 10.) Because Lopez Soza's Reply was filed late, it is not considered here. (See ECF Nos. 8 at PageID 30 (requiring Lopez Soza to file a reply within two days after the response); 13 (filed over seven days after the response).)

For the reasons explained below, Lopez Soza is entitled to immediate release, and his Petition is **GRANTED**.[1]

---

[1] Because this Order is a ruling on the Petition, Lopez Soza's Motion to Expedite Consideration, filed April 17, 2026, is **GRANTED**. (ECF No. 14.)

**BACKGROUND**

Lopez Soza, a citizen of Nicaragua, entered the United States without inspection on December 19, 2022, near San Luis, Arizona.  (ECF Nos. 9 at PageID 41–42; 10-2 at PageID 64.)  At entry, he was fifteen years old and accompanied by his mother.  (ECF No. 9 at PageID 41–42.)  He was then encountered by immigration officers and charged with being an immigrant "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document" under the Immigration and Nationality Act ("INA").  (ECF No. 10 at PageID 51 (quotation modified).)

Since Lopez Soza's brief detention and release, he has lived in Memphis, Tennessee.  (ECF No. 9 at PageID 32.)  He attends Memphis Business Academy High School and is scheduled to graduate next May.  (Id.)  He has no criminal record.  (Id.; ECF No. 10 at PageID 51.)

On February 28, 2023, Lopez Soza was served with a Notice to Appear by DHS, charging him under § 240 of the INA with being subject to deportation because he is an "arriving alien" without any valid entry documentation.  (ECF No. 9 at PageID 37.)  On June 30, 2025, a Memphis IJ ordered him and his mother deported in absentia for failing to appear in immigration court.  (ECF No. 10-4 at PageID 70.)  However, the IJ  "set aside that removal and reopened his case" in August 2025.  (Id.)

Then, in February 2026, Lopez Soza was arrested by Immigration and Customs Enforcement ("ICE") officers under unknown circumstances and detained in the West Tennessee Detention Facility in Mason, Tennessee.  (ECF No. 7 at PageID 27.)  According to Respondent, Lopez Soza "is currently in § 240 removal proceeding[s] with his next report date set for March 27, 2026."  (ECF No. 10 at PageID 51.)  Since his arrest here, Lopez Soza requested a bond

2

determination once, which the IJ denied for lack of jurisdiction because Lopez Soza is an "arriving alien."  (ECF No. 10-3 at PageID 68.)  He remains at the West Tennessee Detention Facility in Mason, Tennessee.  Lopez Soza filed the instant Petition on March 11, 2026, arguing that he is improperly detained under 8 U.S.C. § 1225 and is entitled to release or a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Lopez Soza is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible for a bond hearing or release on bond because he is an "applicant for admission" and "arriving alien."  Until recently, however, most noncitizens in his situation were given bond hearings under a different provision, § 1226(a).  See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Conversely, § 1225(b)(2)(A) prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025),

3

https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Lopez Soza alleges that his mandatory detention violates 8 U.S.C. § 1226 and that the IJ's denial of a bond hearing violates his due process rights under the Fifth Amendment.  (ECF No. 9 at PageID 32.)  He seeks a bond hearing, or release on "reasonable conditions."  (Id. at PageID 34.)  In response, Respondent contends that (1) Lopez Soza should be required to exhaust administrative remedies, (2) § 1225 applies to Lopez Soza, (3) his detention does not violate his Fifth Amendment rights, and (4) a bond hearing is the appropriate remedy if the Petition is granted.  (ECF No. 10 at PageID 52.)

## **ANALYSIS**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Because prudential exhaustion is a threshold matter, this Section first considers whether Lopez Soza

4

should have exhausted his administrative remedies in the immigration courts. Then, the statutes are construed to determine whether §1225 or § 1226 is applicable. A due process analysis follows, including a brief discussion of the appropriate relief here.

## I.    Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). When Congress is silent on administrative exhaustion, "sound judicial discretion governs." Id. Thus, the doctrine of prudential exhaustion dictates that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies. McCarthy, 503 U.S. at 144. The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction. See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018). In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions. E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims. Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21,

5

2025) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024)).  Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

DHS argues that the Court should dismiss the Petition based on prudential exhaustion, as Lopez Soza has not appealed and received an adverse decision from the BIA.  (ECF No. 10 at PageID 53.)  It recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs."  (Id. at PageID 53 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  DHS seeks use of that discretion because it would allow the agencies involved "to apply their special expertise in interpreting . . . statutes" and would "promote[] judicial efficiency."  (Id.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases.  E.g., Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial discretion."  McCarthy, 503 U.S. at 144.  But exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile."  Shalala, 529 U.S. at 13.

Lopez Soza's failure to exhaust is excused.  First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not dispute any material facts other than the date that Lopez Soza entered the United States, which is not determinative.  (ECF Nos. 9 at PageID 32; 10 at PageID 51–52.)  Thus, deciding which statute applies to Lopez Soza's detention is a purely legal question, "which is right in a federal court's wheelhouse."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8; see also Loper Bright Enters. v. Raimondo, 603 U.S. 369, 398–402 (2024).  Further, if he is required to pursue an appeal with the BIA, his appeal process would likely take six months or more.  See Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8 (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)).  Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy.  Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Lopez Soza the chance to obtain relief simply because he did not file an appeal may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here.  The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21.  The Memphis IJ presiding over Lopez Soza's case unequivocally stated that he lacks jurisdiction to provide a bond determination.  (ECF No. 10-3 at PageID 68.)  Thus, an appeal to the BIA would be as fruitless as using a napkin as an umbrella.

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>           . . .
>    (2)    Inspection of other aliens
>       (A)    In general
>               Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)    Arrest, detention, and release

8

> On a warrant issued by the Attorney General, an alien <u>may</u> be <u>arrested</u> <u>and</u>
> <u>detained</u> pending a decision on whether the alien is to be removed from the
> United States.  Except as provided in subsection (c) and pending such
> decision, the Attorney General—
> (1)    <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
> (2)    <u>may</u> <u>release</u> the alien on—
> > (A)    bond of at least $1,500 with security approved by, and
> > containing conditions prescribed by, the Attorney General .
> > . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits
> committing acts which constitute the essential elements of any burglary, theft,
> larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
> that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ." <u>Lopez-Campos</u>, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community." <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a

hearing before an IJ on the issue.[2]

Lopez Soza argues that ICE's new interpretation of § 1225(b) violates the Fifth

Amendment, because he is entitled to an "individualized hearing [regarding bond] before a

neutral decision-maker."  (ECF No. 7 at PageID 14.)  He emphasizes that his detention may be

---

[2] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest
may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . .
the respondent may . . . request amelioration of the conditions under which he or she may be
released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the
alien, and determine the amount of bond, if any, under which the respondent may be released . . .
.").

indefinite in duration, and such indefinite detention is unlawful without a consideration of his "flight risk or danger to the community." (Id. at PageID 14–15.) In support of his contention that 8 U.S.C. § 1226(a) governs his detention, Lopez Soza asserts that he was arrested in the interior United States and was not "seeking admission" into the country at arrest, but rather has lived in Memphis for at least three years. (ECF No. 9 at PageID 32–33.) Further, he asserts that he § 1226(c)'s mandatory detention provision cannot apply here, because he has no criminal record. (Id. at PageID 33.)

DHS argues that § 1225(b)(2)(A), not § 1226(a), applies to Lopez Soza because he is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." [3] (ECF No. 10 at PageID 53.) As a result, he asserts that Lopez Soza "is subject to mandatory detention and not entitled to a bond hearing." (Id.) For support, he relies on Yajure Hurtado, in which the BIA decided that the plain language of § 1225(b) deprives IJs of jurisdiction to "hear bond requests" of immigrants without entry documentation like Lopez Soza. (ECF No. 10 at PageID 54 (citation omitted).) DHS also argues that the decisions in Gonzalez v. Ladwig, No. 26-cv-02017, 2026 WL 413602 (W.D. Tenn. Feb. 13, 2026) and Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), support ICE and DHS's application of § 1225 to Lopez Soza. (Id. at PageID 54–55.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Lopez Soza is an "applicant for admission." Beginning with the titles, the title of § 1225 is

---

[3] DHS invokes the "entry fiction" in its discussion of the statutory issue and the due process issue. That doctrine holds that an undocumented immigrant who is briefly stopped near the border at or soon after entry, remains considered "stopped at the border" even after being paroled into the United States." Bahena v. Trump, NO. 25-223-DLB, 2026 U.S. Dist. LEXIS 23861, at *21–23 (E.D. Ky. Feb. 5, 2026); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020). The entry fiction doctrine does not apply here, because DHS has not shown that Lopez Soza belongs to one of the three categories triggering application of that doctrine.

10

"Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral

for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of

statutes are not controlling, they are "tools available for the resolution of a doubt about the

meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).

Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal"

proceedings.  However, Lopez Soza was not "arriving" when he was detained in west Tennessee

in 2026, after having been in this country for over three years.  (See ECF No. 9 at PageID 42

(listing Lopez Soza's date of entry as December 19, 2022).)  Also, the record does not show that

he was eligible for expedited removal proceedings.  It follows, then, that § 1225 does not apply

here.

Moreover, § 1225's subject matter undercuts DHS's reading of the statute.  Section 1225

describes the process of inspecting and removing immigrants actively crossing the border.  See

Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in §

1225] generally begins at the Nation's borders and ports of entry, where the Government must

determine whether an alien seeking to enter the country is admissible.").  And DHS's reading of

§ 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every

word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading

Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Lopez Soza

would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining
> immigration officer determines that an alien seeking admission is not clearly and
> beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding
> under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Lopez Soza was

seeking admission at the time of his detention, nor does it show that he had received a

11

determination by an immigration officer at the border that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for three years. It would be untenable to interpret "applicant for admission" using its ordinary meaning, while doing so outside the context of the provision.

Also, DHS's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule in § 1226(a)(2) that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained without bond. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Lopez Soza's interpretation of the statutes is the only one compatible with the presence of § 1226(c). And Lopez Soza has no arrests, charges, indictments, or convictions for crimes listed in § 1226(c), so that mandatory detention provision cannot apply to him. See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Lopez Soza's situation. That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Lopez Soza was charged with being

removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  They "may continue to detain [him]" or they "may release [him] on bond."  Id.  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Lopez Soza's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

For the reasons stated above, the Court disagrees with the recent cases cited by DHS, including Gonzalez, 2026 WL 413602, which is nonbinding here.  Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC, 2020 WL 6694299, at *3, *3 n.1 (W.D. Tenn. Nov. 13, 2020) ("Decisions made by district courts within the same district are not binding on one another.") (citing Chinn v. Jenkins, No. 02-cv-512, 2018 WL 488159, at *2 (S.D. Ohio Jan. 19, 2018)).

Moreover, DHS's reliance on <u>Yajure Hurtado</u> in support of its statutory argument fails because the BIA lacks authority to opine on constitutional challenges to agency action. <u>Sterkaj v. Gonzales</u>, 439 F.3d 273, 279 (6th Cir, 2006); <u>see also</u> <u>Loper Bright Enters.</u>, 603 U.S. at 398–402 ("The very point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities.") (explaining that reviewing courts "decide all relevant questions of law and interpret statutory provisions" (citation modified)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of Lopez Soza, an illegal immigrant who has been continuously present in the United States for over three years, is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## III.   Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." <u>Lopez-Campos</u>, 2025 WL 2496379, at *9 (citing <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from <u>Mathews v. Eldrige</u>, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. <u>See, e.g.</u>, <u>United States v. Silvestre-Gregorio</u>, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Mathews</u>, 424 U.S. at 335.

14

Lopez Soza argues that DHS violates the Due Process Clause of the Fifth Amendment by not affording him the "adequate procedural protection[]" of a bond hearing. (ECF Nos. 7 at PageID 14; 9 at PageID 33–34.) Relying on decisions like that of the Maldonado Bautista court, he argues that his extended detention without a bond determination "has become punitive rather than regulatory." (ECF No. 7 at PageID 15 (citing Maldonado Bautista v. Santacruz, No. 25-1873 (C.D. Cal. Feb. 18, 2026)).) He seeks habeas relief in the form of an individualized bond hearing or immediate release. On the other hand, DHS contends that neither it nor ICE has violated Lopez Soza's due process rights because Congress has decided that undocumented immigrants are not entitled to bond hearings. (ECF No. 10 at PageID 56.) According to DHS, under the entry fiction doctrine, Lopez Soza is treated "as if stopped at the border," and thus, he has only the due process rights provided by § 1225. (Id. at PageID 56 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).) DHS further argues that, even if Lopez Soza was unlawfully detained under the wrong statute, such detention is not unconstitutional. (Id.)

Here, because § 1226(a) applies to Lopez Soza, he is owed the process given to him under that statute. As for the Mathews factors, (1) Lopez Soza has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Lopez Soza's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Lopez Soza was present in the United States for over three years, living in Memphis, and attending high school. (ECF No. 9 at PageID 32.) He is set to graduate from high school in May 2025. (Id.) Although removal proceedings were initiated against him in 2023, those proceedings do not detract from his apparent ties to the United States, his desire to remain,

15

and his recent expectation that he would remain free from mandatory detention without bond.

What is more, DHS's due process argument requires two assumptions: that § 1225 applies here, and that the entry fiction is triggered. (See ECF No. 10 at PageID 56–57.) As explained above, neither of its arguments are persuasive.

Therefore, Lopez Soza's detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Lopez Soza is entitled to immediate release. See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").[4] This relief is especially appropriate given the general practice of immigration courts, bound by Yajure Hurtado, to deny jurisdiction to hold bond hearings. Thus, consistent with the Court's decision in Godinez-Lopez, and upon consideration of the record, Lopez Soza's Petition is **GRANTED**.

---

[4] Contrary to DHS's assertions otherwise (ECF No. 10 at PageID 57–58), release conditioned on a bond hearing is not appropriate here. Because ICE purported to detain Lopez Soza under § 1225(b), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a). Instead, immediate release is the appropriate remedy for Lopez Soza's deprivation of liberty. See Cardona v. Ladwig, No. A203-803-130, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025) ("Because Petitioner's rights to a bond hearing under § 1226(a) have been denied, '[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and, although Petitioner's] release today cannot cure his loss of liberty since [November 3, the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so.'" (quoting Yao v. Almodovar, 25 Civ. 9982, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025))). After all, the Government may at any time detain an immigrant who is illegally present under § 1226(a), subject to a bond hearing, and thus it is not necessary for this Court to order one. Respondent has that discretion, which it chose not to exercise in the first instance. See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

## **CONCLUSION**

For the reasons stated above, Lopez Soza's detention without bond since February 2026 violated his rights to due process, and Petition is **GRANTED**. Respondent is ordered to release Lopez Soza immediately. Respondent is **ENJOINED** from pursuing Lopez Soza's detention under 8 U.S.C. § 1225(b)(2)(A). Respondent is further **ORDERED** to file a Status Report with this Court on or before April 27, 2026, to certify compliance with this Order. Finally, Lopez Soza's Motion to Expedite (ECF No. 14), is **GRANTED**.

**IT IS SO ORDERED,** this 23rd day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE